AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  8:18-mj-1808-JSS |
| BENJAMIN A. LEE, and | ) | |
| DWAYNE NASH, JR. | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ March 28, 2018 - present _____ in the county of _____ Pinellas _____ in the

_____ Middle _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(b)(1)(C) | Conspiracy to possess with intent to distribute cocaine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jason Wetherington, Special Agent, ATF
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/31/18

_____
*Judge's signature*

City and state: Tampa FL

JULIE S. SNEED, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT

Your affiant, Jason K. Wetherington, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, having been duly sworn, states as follows:

1.      I am a Special Agent (SA) with the U.S. Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since January of 2016.  I am currently assigned to the Tampa Field Division, which is located in the Middle District of Florida.  During my time with ATF, I have conducted investigations involving violations of the Federal firearms, arson and explosives laws, as well as other violations of the United States Code, to include violent crimes and narcotic offenses.

2.      The facts contained in this affidavit are based on my personal knowledge, and/or reliable information related to me in my official capacity by first hand observation, from other law enforcement officers involved in this investigation, and from others.  This affidavit should not be construed as a complete statement of all the information generated from the investigation of the events to be described, but only information which I feel are sufficient to establish probable cause in support of this criminal complaint.

3.      I submit this affidavit in support of a criminal complaint charging Benjamin A. LEE (LEE) and Dwayne NASH Jr. (NASH), with committing

the federal offense of conspiracy to possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Through consultation with law enforcement officers, review of investigative reports, and the conducting of and participation in specific investigative activity, I obtained pertinent facts essentially as follows:

## BACKGROUND FACTS OF THE INVESTIGATION

4.    Following an arrest for cocaine distribution charges, a cooperating defendant (CD) advised law enforcement that 2147 17th Avenue South, St. Petersburg, Florida (the residence), was a location where the CD secured quantities of cocaine which the CD sold. The CD further identified sources of supply for that cocaine to include Benjamin A. LEE, Jr. (LEE).

5.    The CD further explained that sometimes he would travel to the residence to purchase cocaine from LEE and others. On other occasions LEE or others would deliver cocaine to the CD at an agreed upon location.

6.    On March 28, 2018, SA Chad Horst reviewed the State of Florida Driver and Vehicle Information Database (DAVID) in reference to LEE and found a listed address for the residence.

7.    On several occasions in April, 2018 an undercover detective (UC) made purchases of cocaine from an individual at the residence. That individual was later arrested on unrelated charges.

2

8.      On May 7, 2018, the UC sent a text message to the phone used for communications for the previous cocaine transactions in furtherance of this investigation. This text led to communications between the UC and an individual identified as Dwayne NASH Jr. aka "Jay" (NASH). During this conversation, NASH indicated he was the brother of the other individual who sold cocaine to the UC. NASH further indicated that his brother was on "vacation." NASH, however, indicated that NASH would prepare the cocaine for The UC to purchase and agreed to meet at the residence for the purpose of selling an "eight ball" of cocaine.

9.      Continuing on this date, The UC traveled to the the residence. After arriving, The UC observed NASH exit the residence via the front door and have a brief conversation with LEE, who was seated under a tent in the driveway of the residence. After this conversation, NASH re-entered the residence for a brief period. NASH then again exited the residence via the front door and walked directly to the UC's vehicle. Here, along with a brief conversation, NASH provided the UC with approximately 3.3 grams of cocaine in exchange for $200.00. Following this exchange, the UC observed NASH walk directly to LEE and provide LEE the $200.00 described above. The UC then departed the area.

10.    A presumptive field test conducted on the above purchased approximate 3.3 grams of cocaine had a positive result for cocaine.  The UC filmed and recorded the transaction with a discreet video/audio recording transmitting device.

11.    On May 15, 2018, the UC contacted NASH with the intention of arranging a purchase of cocaine.  The UC notified NASH via telephone that the UC was on her way to his location.

12.    Continuing on this date, after arriving at the residence, NASH provided the UC with an "eight ball" baggie of cocaine in exchange for $250.00.  Following this exchange, the UC observed NASH walk directly to LEE and provide LEE with the $250.00.

13.    As the UC departed the area the UC was contacted by NASH. During this conversation, NASH indicated the baggie of cocaine he had just provided was light and offered the UC with the opportunity to return to his location for an additional quantity.  In response, the UC agreed and returned to the residence and met with NASH.  At this time, NASH provided the UC with a baggie containing an additional quantity of cocaine

14.    A presumptive field test conducted on the above purchased quantities (two baggies) weighing approximately 5.5 grams of cocaine had a

4

positive result for cocaine. The UC filmed and recorded the transaction with a discreet video/audio recording transmitting device.

15.    On May 25, 2018, The UC had a conversation with NASH via a series of recorded texts messages and a telephone call with the intention of arranging a purchase of cocaine. During this conversation, NASH agreed to meet the UC on this date at the residence to sell four "eight balls" of cocaine.

16.    Continuing on this date, the UC traveled to the residence. The UC met with NASH and NASH provided the UC with approximately 15.1 grams of cocaine in exchange for $720.00. NASH provided a scale to The UC to verify the weight of the provided cocaine.

17.    A presumptive field test conducted on the above purchased approximate 15.1 grams of cocaine had a positive result for cocaine. The UC filmed and recorded the transaction with a discreet video/audio recording transmitting device.

18.    On June 6, 2018, NASH provided the UC with a plastic baggie containing approximately 4.6 grams of cocaine in exchange for $200.00. Following this exchange, NASH walked directly back to the residence and the UC departed the area.

19.    A presumptive field test conducted on the above purchased cocaine weighing approximately 4.6 grams of cocaine had a positive result for cocaine.

20.    On June 27, 2018, NASH provided the UC with approximately 4.3 grams of cocaine in exchange for $200.00.  Following this exchange, NASH walked directly back to the residence and the UC departed the area.

21.    A presumptive field test conducted on the above purchased cocaine weighing approximately 4.3 grams of cocaine had a positive result for cocaine.

22.    On August 2, 2018, NASH provided the UC with approximately 4.4 grams of cocaine in exchange for $200.00.  A brief conversation between the UC and NASH followed the transaction.  Then the UC observed NASH walk directly to LEE to give him the cash, and then walk back inside the residence before the UC departed the area.

23.    A presumptive field test conducted on the above purchased approximate 4.4 grams of cocaine had a positive result for cocaine.  The UC filmed and recorded the transaction with a discreet video/audio recording transmitting device.

24.    On August 7, 2018, while waiting for NASH to conduct another cocaine transaction at the residence, the UC made contact with LEE.  The UC

asked LEE if the UC could call him directly "next time" (referring to the next narcotics transaction).  LEE responded to the UC, saying NASH would get "mad" if he gave the UC his number.  The UC asked LEE if the UC could call him next time if NASH failed to answer the UC's phone calls.  LEE agreed and retrieved a small ripped piece of paper from the ash tray/center console area of his Audi with a phone number written on it.   After a short period NASH then provided the UC with approximately 4.6 grams of cocaine in exchange for $200.00.

25.     A presumptive field test conducted on the above purchased approximate 4.6 grams of cocaine had a positive result for cocaine.  The UC filmed and recorded the transaction with a discreet video/audio recording transmitting device.

26.     Continuing on this date, the UC contacted LEE calling the phone number LEE handed the UC on and requested an "eight ball" of cocaine from LEE.  LEE agreed and arranged to meet at the Home Depot located at 2300 22nd Ave N in St. Petersburg.

27.     Continuing on this date, the UC arrived at the Home Depot. Moments later, LEE arrived at the Home Depot driving his black Audi and parked a few spaces from the UC.  The UC got out of an undercover vehicle and approached the passenger side of LEE's vehicle, getting into his vehicle

7

(front passenger seat). The UC spoke face-to-face with LEE inside his vehicle for approximately five minutes, eventually providing LEE with $200.00 in exchange for approximate 4.4 grams of cocaine. LEE agreed to meet the UC again for future deals before their conversation ended.

28.      A presumptive field test conducted on the above purchased approximate 4.4 grams of cocaine had a positive result for cocaine. The UC recorded the transaction with a discreet video/audio recording transmitting device.

29.      On August 8, 2018, the UC contacted LEE and requested an "eight ball" of cocaine from LEE. LEE agreed and arranged to meet at the Home Depot. As a result, the UC met with LEE at the Home Depot and provided LEE with $300.00 in exchange for approximate 6.1 grams of cocaine. LEE agreed to meet the UC again for future deals.

30.      A presumptive field test conducted on the above purchased approximate 6.1 grams of cocaine had a positive result for cocaine. The UC recorded the transaction with a discreet video/audio recording transmitting device.

31.      On August 10, 2018, the UC contacted LEE and requested four "eight balls" of cocaine from LEE. LEE agreed and arranged to meet at the Home Depot. As a result, the UC provided LEE with $800.00 in exchange for

cocaine. Before their conversation ended, the UC requested to call back LEE in approximately one hour to purchase four more "eight balls". LEE agreed and told the UC that he could meet again for another purchase.

32.     Continuing on this date, approximately one hour later the UC contacted LEE and requested four more "eight balls" of cocaine from LEE. LEE agreed and arranged to meet at the Home Depot.

33.     Continuing on this date, the UC arrived back at the Home Depot, met with LEE, and exchanged $800.00 for cocaine. Before their conversation ended, the UC asked whether LEE could give the UC a better price on future deals. LEE agreed and told the UC that he could meet for future deals.

34.     A presumptive field test conducted on the above purchased approximate 17.4 grams of cocaine had a positive result for cocaine. The UC recorded the transaction with a discreet video/audio recording transmitting device.

35.     On August 14, 2018, the UC contacted LEE and requested two "eight balls" of cocaine from LEE. LEE agreed and arranged to meet at the Home Depot. As a result, the UC met with LEE and exchanged $400.00 for cocaine.

36.    A presumptive field test conducted on the above purchased approximate 8.5 grams of cocaine had a positive result for cocaine.  The UC recorded the transaction with a discreet video/audio recording transmitting device.

37.    On August 21, 2018, the UC contacted LEE and requested two "eight balls" of cocaine from LEE.  LEE agreed and arranged to meet at the Outback Steakhouse located at 1900 4th St N in St. Petersburg.

38.    On this date, the UC traveled to the Outback Steakhouse, and met with LEE. The UC provided LEE with $400.00 in exchange for cocaine.

39.    A presumptive field test conducted on the above purchased approximate 8.9 grams of cocaine had a positive result for cocaine.  The UC recorded the transaction with a discreet video/audio recording transmitting device.

40.    On August 22, 2018, the UC contacted LEE and requested two "eight balls" of cocaine from LEE.  LEE agreed and arranged to meet at the Home Depot. As a result, the UC met with LEE and provided LEE with $400.00 in exchange for cocaine.

41.    A presumptive field test conducted on the above purchased approximate 8.7 grams of cocaine had a positive result for cocaine.  The UC

recorded the transaction with a discreet video/audio recording transmitting device.

## CONCLUSION

42.    I submit these facts as evidence that probable cause exists to believe that  Benjamin A. LEE and Dwayne NASH Jr. have violated the laws of the United States, specifically, conspiracy to possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).

Jason Wetherington, Special Agent
Alcohol, Tobacco, Firearms and
Explosives

Sworn to and subscribed before me
this _31_ day of August, 2018,
at Tampa, Florida.

JULIE S. SNEED
United States Magistrate Judge

11